UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


FELIPE PLANES,

        Petitioner,

                                  CASE NO. 2:07-CV-14000

   v.                             JUDGE PAUL D. BORMAN

                                  MAGISTRATE JUDGE PAUL J. KOMIVES

MARY K. BERGHUIS,

        Respondent.

_____/


# REPORT AND RECOMMENDATION


*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    D.    *Sufficiency of the Evidence (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    E.    *Evidentiary Claims (Claims V & VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
         2.    *DNA Evidence (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
         3.    *Bolstering Testimony (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    F.    *Prosecutorial Misconduct (Claim VII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
             a.  Vouching . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
             b.  Appeal to Sympathy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
             c.  Cumulative Effect of Prosecutor's Misconduct . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    G.    *Jury Instructions (Claim VIII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    H.    *Ineffective Assistance of Counsel (Claims I, II & IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
         2.    *Trial Counsel (Claims I & IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
             a.  Bind Over (Claim I.A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
             b.  Interpreter (Claim I.B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
             c.  Failure to Call Alibi Witnesses (Claim I.C) . . . . . . . . . . . . . . . . . . . . . . . . . . 32
             d.  Failure to Object to Biased Juror (Claim I.D) . . . . . . . . . . . . . . . . . . . . . . . . 34
             e.  Failure to Present Exculpatory Evidence (Claim I.E) . . . . . . . . . . . . . . . . . . . 36
             f.  Failure to Request Accomplice Witness Instruction (Claim IV) . . . . . . . . . . . . . . 39
         3.    *Appellate Counsel (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

    I.        *Characterization of Post-Conviction Motion (Claim IX)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
    J.        *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
          1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
    K.       *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
III.       NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

\*     \*     \*     \*     \*

I.     <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.    <u>REPORT</u>:

A.    *Procedural History*

1.     Petitioner Felipe Planes is a state prisoner, currently confined at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan.

2.     On October 28, 1991, petitioner was convicted of first degree murder, MICH. COMP. LAWS § 750.316, following a jury trial in the Oakland County Circuit Court. On December 2, 1991, he was sentenced to a mandatory term of life imprisonment without possibility of parole.

3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

    I.     THE TRIAL COURT ERRED IN DENYING MR. PLANES' MOTION FOR DIRECTED VERDICT, IN VIOLATION OF DUE PROCESS OF LAW, WHERE THE EVIDENCE PRESENTED BY THE PROSECUTION WAS INSUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THAT HE AIDED AND ABETTED THE MURDER, IN THAT IT FAILED TO SHOW BEYOND A REASONABLE DOUBT MORE THAN MERE PRESENCE WITH KNOWLEDGE THAT AN OFFENSE WAS ABOUT TO BE COMMITTED, OR PASSIVE ACQUIESCENCE.

    II.    THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY FAILING TO SUA SPONTE GIVE A CAUTIONARY INSTRUCTION ON THE INHERENT UNRELIABILITY OF ACCOMPLICE TESTIMONY WITH REGARD TO DOMINGO MARTIN, AND DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL

FAILED TO REQUEST SUCH AN INSTRUCTION.

III.     IT WAS REVERSIBLE ERROR TO ADMIT THE RESULTS OF DNA TESTING BECAUSE THE METHOD USED TO CALCULATE STATISTICAL PROBABILITY OF OCCURRENCE IS NO LONGER GENERALLY ACCEPTED IN THE SCIENTIFIC COMMUNITY, AND BECAUSE THE LABORATORY IMPROPERLY CALCULATED STATISTICAL PROBABILITIES WITH RESPECT TO THE STAIN ONLY AS TO THE BLACK POPULATION, RATHER THAN THE TOTAL POPULATION.

IV.      IT WAS REVERSIBLE ERROR FOR THE TRIAL COURT TO ALLOW A POLICE OFFICER TO BOLSTER THE CREDIBILITY OF THE PROSECUTION'S KEY WITNESS BY ALLOWING HIM TO TESTIFY THAT IN HIS OPINION THE WITNESS WAS TRUTHFUL IN STATEMENTS HE GAVE TO POLICE.

V.       DEFENDANT WAS DENIED HIS DUE PROCESS RIGHT TO A FAIR TRIAL, WHERE THE PROSECUTOR REPEATEDLY AND PERSONALLY VOUCHED FOR THE GUILT OF MR. PLANES AND FOR THE TRUTH OF THE TESTIMONY OF DOMINGO MARTIN, THE PROSECUTION'S KEY WITNESS, AND ENGAGED IN OTHER IMPROPER ARGUMENT AND TACTICS DESIGNED TO DENY DEFENDANT A FAIR TRIAL.

         A.     THE PROSECUTOR IMPROPERLY VOUCHED FOR THE TRUTH OF THE ALLEGATIONS AND THE GUILT OF THE DEFENDANT.

         B.     THE PROSECUTOR IMPROPERLY APPEALED TO SYMPATHY FOR THE VICTIM AND THE VICTIM'S FAMILY AND ASKED THE JURY TO CONVICT ON THAT BASIS.

         C.     THE CUMULATIVE EFFECT OF THESE ERRORS DENIED DEFENDANT A FAIR TRIAL.

VI.      THE TRIAL COURT COMMITTED REVERSIBLE ERROR, DENYING DEFENDANT DUE PROCESS OF LAW, WHEN, AFTER THE PROSECUTOR ARGUED THAT THE NUMBER OF WOUNDS INFLICTED ON THE VICTIM SHOWED PREMEDITATION AND DELIBERATION, IT REFUSED TO INSTRUCT THE JURY THAT THE NUMBER OF WOUNDS BY ITSELF WAS INSUFFICIENT TO PROVE PREMEDITATION.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Planes*, No. 147354 (Mich. Ct. App. Oct. 14, 1994) (per curiam).

4.      Petitioner sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Planes*, 450 Mich. 1015, 548 N.W.2d 643 (1996).

5.      In 2005, petitioner filed a motion for new trial and for DNA testing, which the trial court characterized as a motion for relief from judgment pursuant to MICH. CT. R. 6.500-.508. Petitioner's motion sought DNA testing on blood stains recovered on a pair of blue jeans pursuant to MICH. COMP. LAWS § 770.16, and a new trial based on the following claims:

I.      DEFENDANT'S 6TH AMENDMENT CONSTITUTIONAL RIGHT TO TRIAL COUNSEL WAS VIOLATED.

     A.      PETITIONER'S 6TH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN HIS TRIAL ATTORNEY ACTED AS A PROSECUTOR BY ASKING THE COURT TO BIND THE PETITIONER OVER ON A CRIME NOT CHARGED IN THE INFORMATION.

     B.      PETITIONER'S 6TH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED BY THE LACK OF INTERPRETATION DURING HIS TRIAL WHERE THE PETITIONER DID NOT UNDERSTAND ENGLISH AND COULD NOT COMMUNICATE WITH HIS COUNSEL AND/OR AID IN HIS DEFENSE.

     C.      PETITIONER'S 6TH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN HIS TRIAL ATTORNEY FAILED TO CALL ALIBI WITNESSES.

     D.      PETITIONER'S 6TH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED BY HIS TRIAL ATTORNEY'S FAILURE TO OBJECT AND/OR MOTION THE COURT FOR A MISTRIAL WHERE A BIAS[ED] JUROR WHO HAD BEEN DISMISSED DURING VOIR DIRE CONSENTED TO THE VERDICT DURING THE POLLING OF THE JURY.

     E.      PETITIONER'S 6TH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED BY HIS TRIAL ATTORNEY'S FAILURE TO REQUIRE EXCULPATORY EVIDENCE TO BE PRESENTED AT TRIAL.

     F.      PETITIONER'S 6TH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED BY HIS TRIAL ATTORNEY'S ERRORS.

II.     PETITIONER WAS DENIED HIS 6TH AMENDMENT CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

On September 21, 2005, the trial court denied petitioner's motion, concluding that he was not entitled to DNA testing under § 770.16, and that petitioner's new trial claims were barred pursuant to Rule 6.508(D)(3) based on petitioner's failure to raise the claims on direct appeal. Petitioner filed applications for leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court, raising the following claim:

     THE TRIAL COURT ERRED IN RE-CHARACTERIZING APPELLANT'S MCL 770.16 MOTION FOR DNA TESTING AND HOLDING IT TO BE A MCR 6.500 MOTION FOR RELIEF FROM JUDGMENT.

The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Planes*, 480 Mich. 856, 737 N.W.2d 734 (2007); *People v. Planes*, No. 272814 (Mich. Ct. App. Apr. 18, 2007).

     6.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on September 21, 2007, and an amended petition on February 6, 2008. As grounds for the writ of habeas corpus, he raises the ineffective assistance of counsel claims raised in his motion for new trial (Claims I-II), the claim raised on appeal from the denial of his motion for new trial (Claim IX), and the claims raised on direct appeal (Claims III-VIII). In his fourth claim, which was his second claim

on direct appeal, petitioner contends only that counsel was ineffective for failing to request a cautionary instruction regarding accomplice testimony; he appears to have dropped his claim that the he was denied a fair trial by the trial court's failure to give such an instruction *sua sponte*.

7.      Respondent filed her answer on September 11, 2009. She contends that petitioner's claims are without merit.[1]

8.      Petitioner filed a reply to respondent's answer on October 16, 2009.

B.      *Factual Background Underlying Petitioner's Conviction*

The evidence adduced at trial underlying petitioner's conviction was accurately summarized in the trial court's order denying petitioner's motion for DNA testing and new trial:

> At trial, the following evidence was presented. On November 8, 1990, Co-Defendant Nelson Cobas telephoned Domingo Martin and told him that he and Defendant Felipe Planes wanted to buy a kilo of cocaine. Martin telephoned the victim, Dorlando "Rick" Kenney, to set up a deal. Martin met Cobas and Defendant Planes and agreed to act as their driver since Cobas and Defendant Planes were from out of town. They picked up Kenney and went to several houses where Kenney tried without success to purchase cocaine. After the third house, Kenney told them there was a price problem. The sellers wanted $28,000, but Cobas and Defendant only had $27,000.
>
> The men dropped Kenney off at his girlfriend's house. They later called him and he told them that he had set up a deal. They picked him up and went to the arranged meeting place. Everyone got out of the car. Defendant opened the trunk and Cobas took out a canvas bag full of money. The men then walked over to Steve's car. Cobas gave him the money and Steve handed over a tightly wrapped package and drove away.
>
> Cobas checked the contents of the package and found that it contained only sugar. Defendant and Cobas were angry. Cobas said "nobody is leaving the car until we get the right material, the right stuff or the money." "Somebody has to pay." These remarks were made in Spanish, a language Kenney did not understand. Martin acted as an interpreter when necessary. Kenney said that he could help them find Steve.
>
> Cobas was concerned that if they found Steve, they had no weapons with

---

[1]Respondent previously filed a motion for summary judgment, arguing that petitioner's claims are barred by the statute of limitations, 28 U.S.C. § 2244(d). The Court denied the motion for summary judgment.

which to defend themselves with if trouble arose. So they both went to Martin's house and got a knife with an 8-10" blade. They went looking for Steve. They checked out several houses. Kenney said that he wanted to get out of the car to get something to eat. Defendant and Cobas refused to let him leave the car, suspecting that he had set them up for the rip off. The back door of the car could not be opened from the inside.

When they could not find Steve, Martin placed the knife on the floor of the car under the driver's seat at Cobas' request. Cobas said in Spanish "we have to put pressure on him [Kenney]." Martin did not translate this for Kenney. Martin wanted to go home, concerned that something bad was going to happen. Martin told Defendant and Cobas how to get to I-96. When Martin left, Defendant got into the driver's seat. Kenney was still in the back seat. It was about 11:30 p.m. Kenney was never seen alive again.

The next morning, Mr. Terry Fair found Kenney's body lying alongside 12 1/2 Mile Road in Novi, a gravel road near I-96. It was not a well-traveled road. There were blood stains on the roadway. Kenney's watch was lying on the roadway. He was wearing a blue down-filled coat. The coat was slashed and down feathers were blowing around the area. No weapon was found in the area.

The cause of death was multiple stab wounds. The wounds were all consistent with the type of knife Martin had left in the car. The medical examiner concluded that Kenney had been dead for at least 12 hours, sometime before 2:30 a.m. on November 9th.

On November 10th, Cobas called Martin and told him to post signs on the houses they had visited, saying "return the money or else." He told Martin not to tell anyone what happened. A few days later, Cobas called again. He asked in Spanish whether "they found him broken." Although Martin knew that Kenney's body had been found, he told Cobas he had not heard anything about it. Cobas again told Martin not to say anything, telling him that the knife belonged to him. (Martin).

Martin went to the police and told them what happened. Cobas found out and called Martin and said "this is a serious matter" and said that he did not want to do time.

The police arrested Cobas on December 13, 1990. Inside of the trunk of the car was a pile of clothing and a pair of blue jeans with bloodstains on them. DNA testing matched the blood of Kenney.

When Defendant was arrested, he was still in possession of the car the men had driven on the night of the murder. In the car, the police found a plastic card with Cobas' fingerprint on it. The upholstery on the back of the front passenger seat had been cut out. A down feather was stuck to the radiator. Analsis showed that it was the same type of down as was in Kenney's coat.

*People v. Planes*, No. 91-106067-FC, at 1-3 (Oakland County, Mich., Cir. Ct., Sept. 21, 2005).

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694.

However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D.

Mich. 2002) (Tarnow, J.).

D.      *Sufficiency of the Evidence (Claim III)*

Petitioner first contends that the prosecutor presented insufficient evidence to prove his guilt beyond a reasonable doubt. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). However, under the amended version of § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

Under Michigan law, the common law crime of murder is defined as second degree murder, and is punishable by up to life imprisonment. *See* MICH. COMP. LAWS § 750.317. To establish second degree murder, the prosecution must show that the defendant killed a human being with malice aforethought. In order to show malice aforethought, the prosecution must establish one of three mental states on the part of the defendant at the time of the killing: (1) intent to kill; (2) intent to commit great bodily harm; or (3) intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *See People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984); *People v. Aaron*, 409 Mich. 672, 713-14, 299 N.W.2d 304, 319-20 (1980). Certain additional elements elevate second degree murder to first degree murder, which is punishable by a mandatory term of nonparoleable life imprisonment. Specifically, under Michigan law, first degree murder includes any "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MICH. COMP. LAWS § 750.316(1). Thus, "[i]n order to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v. Anderson*, 209 Mich. App. 527, 537, 531 N.W.2d 780, 786

(1995); *see also*, *Grant v. Rivers*, 920 F. Supp. 769, 786 (E.D. Mich. 1996); *People v. Younger*, 380 Mich. 678, 681, 158 N.W.2d 493, 495 (1968); *People v. Brown*, 137 Mich. App. 396, 407, 358 N.W.2d 592, 597 (1984).

Further, MICH. COMP. LAWS § 767.39 abolished the common law distinction between aiders and abettors and principals, and provides that aiders and abettors may be prosecuted and convicted as though they had directly participated in the crime. *See People v. Palmer*, 392 Mich. 370, 378, 220 N.W.2d 393, 396 (1974). Aiding and abetting under Michigan law requires proof of three elements: (1) commission of the underlying crime either by the defendant or some other person; (2) acts or encouragement by the defendant which aided or assisted the commission of the crime; and (3) intent on the part of the defendant to commit the crime or knowledge by the defendant that the principle intended to commit the crime at the time aid or encouragement was given. *See People v. Acosta*, 153 Mich. App. 504, 511-12, 396 N.W.2d 463, 467 (1986) (per curiam). Thus, "[t]o be convicted of aiding and abetting first-degree [premeditated] murder, the defendant must have had the intent to kill or have given the aid knowing the principal possessed the intent to kill." *People v. Buck*, 197 Mich. App. 404, 410, 496 N.W.2d 321, 326 (1992), *rev'd on other grounds sub nom. People v. Holcomb*, 444 Mich. 853, 508 N.W.2d 502 (1993).

2.     *Analysis*

Petitioner contends that the evidence at trial showed at most his mere presence and passive acquiescence and thus was insufficient to show that he intended to kill the victim or knew that Cobas intended to do so. The Court should disagree.

There was ample evidence that petitioner actively assisted Cobas during the events leading up to the murder, and that petitioner was an active participant in the murder. The evidence, if

believed by the jury, established that Cobas and petitioner blamed Kenney for stealing their $27,000, and according to Martin petitioner agreed with Cobas that they needed to teach Kenney a lesson. Martin's testimony also established that petitioner and Cobas together got a knife from Martin's house, and together refused to let Kenney leave the car. The evidence also established that petitioner was driving the car when Martin got out, and that petitioner knew that Martin's knife had been left behind. Further, at the time of his arrest petitioner was still driving the car in which he and Cobas drove off with Kenney. A piece of upholstery had been cut out, suggesting that petitioner had attempted to hide the crime.

It is well established that both intent to kill and "premeditation and deliberation may be inferred from the circumstances surrounding the killing." *People v. Ortiz-Kehoe*, 237 Mich. App. 508, 520, 603 N.W.2d 809 (1999); *accord Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998); *People v. McRunels*, 237 Mich. App. 168, 181, 603 N.W.2d 95, 102 (1999). Here, the evidence presented showed a complete concert of action between petitioner and Cobas throughout the events leading to the murder, that petitioner actively assisted the murder by driving to a secluded location, and that petitioner agreed with Cobas that "somebody had to pay" and jointly participated in arming himself and Cobas with a knife. From this evidence, a rational jury could infer that petitioner intended to kill Kenney or knew that Cobas intended to kill Kenney when he gave Cobas assistance. That the evidence might equally support other, innocent, inferences is irrelevant; the prosecution's evidence need not rule out every hypothesis other than petitioner's guilt to be sufficient. *See Jackson*, 443 U.S. at 326. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.     *Evidentiary Claims (Claims V & VI)*

Petitioner next raises two evidentiary claims. First, he contends that DNA evidence was improperly admitted. Second, he contends that the trial court erred in allowing a police officer to testify that Martin was being truthful. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Clearly Established Law*

Unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional violation. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994); *see also, Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right

to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

    2.    *DNA Evidence (Claim V)*

Petitioner first contends that he was denied a fair trial by the introduction of DNA evidence. At trial, Dr. Charlotte Word testified that the blood on the jeans found in the trunk of Cobas's car matched the DNA extracted from the decedent's blood sample. *See* Trial Tr., dated 10/24/91, at 368-72. She also testified that the probability of another person in the African-American population producing a DNA sample that matched the banding pattern of the victim's DNA was approximately 1 in 33 million. *See id*. at 374-75. Petitioner contends that it was error to admit this evidence because it was based on unreliable scientific methods and because the statistical comparison was made only relative to the African-American population, not the whole population. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Before addressing petitioner's argument, a brief background of the standards for admission of scientific evidence is necessary. At the time of petitioner's conviction, the Michigan courts applied the oft-used, and oft-criticized, framework established in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). In *Frye*, the court established what came to be known as the "general acceptance" test for determining whether new or novel scientific techniques may be admitted into evidence. The court explained:

> Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-

> recognized scientific principle or discovery, the thing from which the deduction is made must be *sufficiently established to have gained general acceptance in the particular field in which it belongs.*

*Frye*, 293 F. at 1014 (emphasis added). Although not explicitly "adopting" the *Frye* standard, the Michigan Supreme Court employed a similar analysis in *People v. Davis*, 343 Mich. 348, 370-72, 72 N.W.2d 269, 281-82 (1955), and the Michigan courts have interpreted *Davis* as adopting the *Frye* rule. *See People v. Young*, 418 Mich. 1, 17-20, 340 N.W.2d 805, 812-13 (1983); *People v. Haywood*, 209 Mich. App. 217, 221, 530 N.W.2d 497, 499-500 (1995). Under the *Davis/Frye* rule, as it is known, novel scientific evidence is inadmissible unless the proponent of the evidence demonstrates that it has been generally accepted in the relevant scientific community. *See Haywood*, 209 Mich. App. at 221, 530 N.W.2d at 500.[2]

As noted above, the question is not whether the admission of this evidence was improper under the *Davis/Frye* rule, or whether the evidence was inadmissible on some other state law basis. Rather, the only issue for this Court on habeas review is whether the admission of the evidence denied defendant a fair trial; that is, whether the evidence was "almost totally unreliable" such that "the factfinder and the adversary system w[ould] not be competent to uncover, recognize, and take

---

[2]The test from *Frye* was the standard governing the admissibility of scientific evidence in the federal courts until it was abrogated by the adoption of Rule 702 of the Federal Rules of Evidence, as interpreted by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). For an excellent discussion of the criticisms of the *Frye* test and the eventual abrogation of the *Frye* rule in the federal courts, see Major Victor Hansen, *Rule of Evidence 702: The Supreme Court Provides a Framework for Reliability Determinations*, 162 MIL. L. REV. 1, 3-18 (1999).

Effective January 1, 2004, Michigan amended Rule 702 to mirror the federal rule. As the Michigan Supreme Court has explained, this amendment to Rule 702 explicitly incorporates the reliability standards identified by the United States Supreme Court in *Daubert*. *See Gilbert v. DaimlerChrysler Corp.*, 470 Mich. 749, 781, 685 N.W.2d 391, 408 (2004). At the time of petitioner's trial and appeal, however, the *Davis/Frye* test was the means by which the admissibility of scientific evidence was determined in Michigan. *See Coy II*, 258 Mich. App. at 10 n.3, 669 N.W.2d at 838 n.3; *People v. McMillan*, 213 Mich. App. 134, 137 n.2, 539 N.W.2d 553, 555 n.2 (1995).

due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983). Petitioner has failed to meet this burden.

First, there is no question that the polymerase chain reaction (PCR) method of DNA testing–the type used in petitioner's case–is sufficiently reliable to be admitted. The "courts have repeatedly held that the PCR method rests on a sufficiently reliable basis to be admitted under Federal Rule of Evidence 702 or state analogues. Indeed, several courts, including the Michigan courts, have concluded that 'the reliability of the PCR method of DNA analysis is sufficiently well established to permit the courts . . . to take judicial notice of it[.]'" *Coy v. Renico*, 414 F. Supp. 2d 744, 761-62 (E.D. Mich. 2006) (Rosen, J.) (citations omitted) (quoting *United States v. Beasley*, 102 F.3d 1440, 1448 (8th Cir. 1996 and citing *United States v. Trala*, 386 F.3d 536, 541-42 (3d Cir. 2004); *United States v. Boswell*, 270 F.3d 1200, 1204-05 (8th Cir. 2001); *United States v. Shea*, 159 F.3d 37, 41 (1st Cir. 1998); *United States v. Gaines*, 979 F. Supp. 1429, 1433 n.4 (S.D. Fla. 1997) (citing decisions of over 20 state appellate courts); *People v. Coy*, 243 Mich. App. 283, 291-92, 620 N.W.2d 888, 893-94 (2000)).

Second, the Michigan Court of Appeals "has continued to reject *Davis-Frye* challenges to statistical analysis of DNA evidence, finding such arguments are relevant to the weight of the evidence, not its admissibility." *People v. Coy*, 258 Mich. App. 1, 11, 669 N.W.2d 831, 838-39 (2003) (per curiam) (discussing and citing *People v. Holtzer*, 255 Mich. App. 478, 491, 660 N.W.2d 405, 412 (2003); *People v. Leonard*, 224 Mich. App. 569, 591, 569 N.W.2d 663, 673 (1997); *People v. Chandler*, 211 Mich. App. 604, 611, 536 N.W.2d 799, 803 (1995)); *see also*, *Murphy v. Elo*, No. 97-CV-76017-DT, 2005 WL 2284223, at *12 (E.D. Mich. Sept. 1, 2005) (Cohn, J., adopting Report of Komives, M.J.), *aff'd*, 250 Fed. Appx.703 (6th Cir. 2007). Indeed, "the courts have recognized

that '[s]tatistical probabilities are basic to DNA analysis and their use has been widely researched and discussed.'" *Coy*, 414 F. Supp. 2d at 762 (quoting *United States v. Davis*, 40 F.3d 1069, 1075 (10th Cir. 1994) and citing *United States v. Chischilly*, 30 F.3d 1144, 1153 (9th Cir. 1994); *United States v. Bonds*, 12 F.3d 540, 557, 565-66 (6th Cir. 1994); *Reid v. Page*, 47 F. Supp. 2d 1008, 1012-13 (C.D. Ill. 1999); *State v. Loftus*, 573 N.W.2d 167, 174-75 (S.D. 1997)).[3]

In short, the DNA evidence was subject to extensive testimony and cross-examination by counsel, and petitioner has failed to establish that the evidence was "almost totally unreliable" such that "the factfinder and the adversary system w[ould] not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot*, 463 U.S. at 899. Any additional question as to the reliability of the evidence was a matter for the jury to determine in deciding what weight to accord the evidence. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim. *See Coy*, 414 F. Supp. 2d at 763.

3.      *Bolstering Testimony (Claim VI)*

Petitioner also contends that he was denied a fair trial by the introduction of testimony by Detective John April that Martin was, for the most part, truthful in the second and third statements that Martin gave to the police. *See* Trial Tr., dated 10/25/91, at 613. The Court should conclude that petitioner is not entitled to habeas relief on this claim. Even if the evidence was inadmissible as a matter of state law, or as a matter of federal evidence law, petitioner cannot show that the introduction of this evidence deprived him of due process or any constitutional right. On the contrary, "[b]olstering claims have been (expressly) held not to be cognizable on federal habeas

---

[3]Nor was the reliability of the evidence undermined by the limitation of the comparison pool to African-Americans. There was no dispute that Kenney, the victim, was African-American, and thus it was appropriate to limit the comparison pool to African-Americans.

review." *Diaz v. Greiner*, 110 F. Supp. 2d 225, 234 (S.D.N.Y. 2000); *cf. Regan v. Hoffner*, 209 F. Supp. 2d 703, 715 (E.D. Mich. 2002) (Friedman, J.). Further, April's testimony was a fair response to defense counsel's impeachment of Martin with his inconsistent statements, and thus was permissible. *See United States v. Mitchell*, 73 Fed. Appx. 670, 672 (5th Cir. 2003); *United States v. Santiago*, 46 F.3d 882, 891-92 (9th Cir. 1995). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Prosecutorial Misconduct (Claim VII)*

Petitioner next contends that he was denied a fair trial by several instances of prosecutorial misconduct. Specifically, petitioner contends that the prosecutor expressed his personal belief in petitioner's guilt, vouched for the credibility of Domingo Martin, and improperly appealed to the jury's sympathy. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally

placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted).

2.    *Analysis*

*a. Vouching*

Petitioner first contends that the prosecutor engaged in improper vouching by expressing his personal belief in petitioner's guilt and the credibility of Domingo Martin. Improper vouching occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also*, *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).[4] Petitioner's claim raises both vouching and bolstering arguments.

Petitioner contends that the prosecutor expressed his personal belief in petitioner's guilt through the following comments:

- During jury selection: "It's no secret. It's the prosecution's position that the victim was stabbed. Ladies and gentlemen, I can't tell you who stabbed the victim. I can't put the knife in either of the defendants' hands at the time they are killing this man." Trial Tr., dated 10/21/91, at 113.

- During opening statement: "On November 8th of 1990, Dorlando Kenney, most commonly known as Rick, was thirty-three years old. November 8th was to be his last day on God's earth because on Novmeber 9th, ladies and gentlemen, Rick Kenney was murdered. He was murdered, ladies and gentlemen, at the hands of the

---

[4]Some cases referring to only the first type of comment as "vouching" and describe the second type of comment as "bolstering." *See Francis*, 170 F.3d at 551.

two men seated in court today, Felipe Planes and Nelson Cobas." Trial Tr., dated 10/22/91, at 173.

- During closing argument: "In the very early, early hours of November 9th, 1990, Felipe Planes and Nelson Cobas murdered Rick Kenney. They did it, ladies and gentlemen, with a knife, and they did it eleven times until finally Rick Kenney stopped fighting for his life and died. They did it because somebody had stolen twenty-seven thousand dollars of their money . . . . Was this Rick Kenney's debt to pay? I don't know, ladies and gentlemen. I don't think we'll ever know whether it was Rick Kenney's debt to pay back Felipe and Nelson. What I do know is this, ladies and gentlemen. Rick Kenney paid that debt back and he paid it back with something more valuable than any kilogram of cocaine or and [sic] twenty-seven thousand dollars of cash. He paid for it with his life." Trial Tr., dated 10/28/91, at 776.

- Again during closing argument: "They did it, all the way from the blood of Rick Kenney on Nelson's blue jeans to the feather, ladies and gentlemen, that found its way sucked into the radiator of the Lincoln Continental that Felipe owns. They did it. The one thing that they couldn't foresee, as careful as they wanted to be, they could never have imagined that Mother Nature would look down on the scene of a violent murder and help place the defendant's own fingerprint on the crime. The one thing they couldn't have thought of: Ricky's down feathers getting sucked into Felipe's radiator. They did it. And now, ladies and gentlemen, comes your chance to tell Felipe Planes and Nelson Cobas that we know. Tell them that you know. Find Felipe Planes and Nelson Cobas guilty of the first degree premeditated murder they committed against Rickey [sic] Kenney." *Id*. at 798-99.

- During rebuttal argument: "Mr. Kabot brought up the aiding and abetting. You bet there's aiding and abetting in this case." *Id*. at 839.

Viewed in context, these comments did not impermissibly vouch for petitioner's guilt. The prosecutor at no time suggested that he believed petitioner was guilty based on any evidence outside the record. Rather, in context the prosecutor's comments were permissible conclusions drawn from the evidence expected to be introduced at trial (with respect to the *voir dire* and opening statement comments) and actually introduced at trial (with respect to the closing and rebuttal argument comments). A prosecutor is free to argue that the evidence introduced at trial establishes the defendant's guilt, and such an argument does not constitute impermissible vouching. *See, e.g.*,

*Nichols v. Scott*, 69 F.3d 1255, 1283 (5th Cir. 1995) (comment "is permissible to the extent that it draws a conclusion based solely on the evidence presented.") (internal quotation omitted); *United States v. Grey Bear*, 883 F.2d 1382, 1392 (8th Cir. 1989); *Martin v. Foltz*, 773 F.2d 711, 717 (6th Cir. 1985) (prosecutor may argue permissible inferences from the evidence); *United States ex rel. Williams v. Washington*, 913 F. Supp. 1156, 1163 (N.D. Ill. 1995) (prosecutor's assertion during closing argument that the defendant had "lied" did not deprive petitioner of a fair trial where "the prosecution's statements were reasonable inferences drawn from the physical evidence and witness testimony[.]").

Petitioner also contends that the prosecutor improperly bolstered the credibility of Domingo Martin when, during rebuttal argument, the prosecutor stated:

> Using your common sense, knowing what he had been through, having to admit he was involved in a drug deal, he probably wasn't anxious to tell the police everything. But after confronted with the probability, 'Pal, you're dealing with murderers. How do you know they're not going to come after you? Why don't you just tell us the truth?' They got the truth. And you got the truth last time.

Trial Tr., dated 10/28/91, at 835-36. As with the other comments discussed above, nothing in this statement expressed a personal belief in the credibility of Martin. Rather, in response to defense counsel's argument regarding Martin's inconsistent statements, the prosecutor was merely noting that the corroborating evidence and common sense should lead the jury to conclude that Martin's last statement to the police was truthful. "[W]here a prosecutor argues that a witness is being truthful based on the testimony given at trial, and does not assure the jury that the credibility of the witness is based on his own personal knowledge, the prosecutor is engaging in proper argument and is not vouching." *United States v. Walker*, 155 F.3d 180, 187 (3d Cir. 1998). Further, the prosecutor was free to comment that the jury should use its common sense in evaluating the credibility of the

witnesses. The prosecutor was arguing that there was a rational explanation, based on the trial evidence, for Martin's inconsistent statements to the police. This was not improper vouching. *See Walker*, 155 F.3d at 187; *see also*, *Nichols*, 69 F.3d at 1283 (comment "is permissible to the extent that it draws a conclusion based solely on the evidence presented.") (internal quotation omitted); *Martin*, 773 F.2d at 717 (prosecutor may argue permissible inferences from the evidence). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his vouching claims.

### b. Appeal to Sympathy

Petitioner next contends that the prosecutor improperly appealed to the jury's sympathy and sense of civic duty by arguing:

> Ladies and gentlemen, the Constitution of the United States guarantees liberty and justice for all. When we selected the jury, you all said that you'd remember that you'd give the defendants a fair trial, but you also have to be fair to the prosecution. And you have to be fair to the victim of the crime and to the victim's family. Ladies and gentlemen, we have spent an entire week seeing to it that Felipe Planes and Nelson Cobas got a fair trial. Now when you go into the jury room, give a fair trial to the other people involved in this case and send the message that you know what happened on 12 ½ Mile Road in Novi. In other words, ladies and gentlemen, do justice. Find Felipe Planes guilty of the first degree, premeditated murder that they committed on approximately this anniversary of Ricky Kenney's death.

Trial Tr., dated 10/28/91, at 844.

To the extent petitioner claims these comments appealed to the jury's sense of civic duty, petitioner's argument is without merit. A "civic duty" argument is one which "encourages the jury to convict the defendant based upon principles of protection of the community and encourages them to ignore the evidence in the case." *United States v. Mejorado-Soto*, No. 94-2404, 1995 WL 764115, at *2 (6th Cir. Dec. 27, 1995) (per curiam). Here, the prosecutor did neither. With respect

to petitioner's sympathy argument, it is true that the prosecutor's comments seem designed to elicit a certain amount of sympathy for the victim and his family. However, in light of the overwhelming evidence of petitioner's guilt, petitioner cannot show that these comments deprived him of a fair trial. Although the prosecutor's language may have been somewhat emotional, the prosecutor did not ask the jury to convict out of sympathy for the victim or appeal to the jury to act as the conscience of the community. Even if improper the prosecutor's references to the victim were much less prejudicial than other comments referring to victims which have been upheld on habeas review. *See, e.g.*, *Brechen v. Reynolds*, 41 F.3d 1343, 1355-56 (10th Cir. 1994); *United States ex. rel. Rockman v. DeRobertis*, 717 F. Supp. 553, 569-70 (N.D. Ill. 1989)(prosecutor's reference to victim "in his grave crying out for a guilty verdict" did not deprive petitioner of a fair trial); *Kordenbrock v. Scroggy*, 680 F. Supp. 867, 896-96 (E.D. Ky. 1988)(petitioner was not denied a fair trial where, during the guilt-innocence phase of the trial, the prosecutor admonished the jury not to forget the victim because "he had a right to live."), *rev'd on other grounds*, 919 F.2d 1091 (6th Cir. 1999)(en banc). Further, immediately following the prosecutor's statement, the trial court instructed the jury: "I'm going to instruct the jury specifically before I begin, you don't send any messages under any circumstances. It's your function to find only guilt or innocence." Trial Tr., dated 10/28/91, at 845. Thus, any prejudicial effect was cured by the court's instruction. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Cumulative Effect of Prosecutor's Misconduct

Finally, petitioner contends that he was denied a fair trial by the cumulative effect of the prosecutor's misconduct. The Court should conclude that petitioner is not entitled to habeas relief on this claim. As just discussed, none of the prosecutor's actions amounted to prosecutorial

misconduct, and thus petitioner's "argument that the cumulative effect of such misconduct renders his trial fundamentally unfair is without merit." *United States v. Sherrill*, 376 F.3d 535, 539 (6th Cir. 2004); *see also*, *Millender v. Adams*, 376 F.3d 520, 529 (6th Cir. 2004) (cumulative error claim is without merit where there are "no errors to consider cumulatively.").

G.      *Jury Instructions (Claim VIII)*

Petitioner next contends that he was denied a fair trial by the trial court's jury instructions. Specifically, he contends that, in response to the prosecutor's argument that the number of stab wounds showed premeditation, the court should have instructed the jury that the number of stab wounds alone was not enough to prove premeditation beyond a reasonable doubt. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws). Thus, in order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle*, 502 U.S. at 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct

criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). In short, instructional errors of state law will rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

    2.    *Analysis*

During rebuttal argument, the prosecutor pointed to a number of factors which supported a finding that the murder of Kenney was premeditated. *See* Trial Tr., dated 10/28/91, at 841-44. As part of this argument, the prosecutor suggested that the number of stab wounds on the victim showed premeditation and deliberation. *See id.* at 843-44. In response to this argument, counsel for petitioner's codefendant requested an instruction that the number of stab wounds alone could not establish premeditation beyond a reasonable doubt. *See id.* at 865-66. The trial court refused to give the requested instruction, concluding that the prosecutor had not argued that the number of stab wounds alone was sufficient to establish premeditation, but had merely pointed to this fact as one among many others which established premeditation. *See id.* at 866. The court gave the jury a detailed instruction on the premeditation element, *see id.* at 853-55. And with respect to state of mind, the court instructed the jury:

> You must consider all of the facts and circumstances in determining the defendant's state of mind at the time of the act. This may be inferred from the kind of weapon used, the nature of the wounds inflicted, the circumstances surrounding the killing, the acts, conduct, and language of the defendant, or any other circumstances in

evidence.

You must consider all of the facts and circumstances in evidence in determining whether there has been deliberation and premeditation. Deliberation and premeditation may be inferred from any actions of the defendant prior to the killing which show planning from the defendant's prior relationship with the victim which might show motive, from whether the manner of killing shows a preconceived design to take the victim's life, from organized conduct after the killing suggesting the existence of a plan, or for [sic] any other circumstances surrounding the killing. A motive alone, without other evidence of premeditation and deliberation, is insufficient to establish first degree murder.

If, from all the evidence, you have a reasonable doubt as to whether the defendant acted with deliberation and premeditation, you must find him not guilty of murder in the first degree.

*Id*. at 857-58.

Petitioner does not contend that the trial court's premeditation instruction was erroneous, or that it did not adequately explain to the jury the premeditation element of the offense. Rather, he contends that he was entitled to an additional instruction specifically stating that the number of knife wounds alone was not sufficient to establish premeditation. However, petitioner cannot show that he was denied a fair trial by the absence of such an instruction. The prosecutor did not argue that the jury could or should find premeditation based solely on the number of knife wounds; rather, the prosecutor pointed to the number of wounds as one fact among many supporting a finding of premeditation. While the number of knife wounds or the brutality of a killing may not alone constitute sufficient evidence to find premeditation beyond a reasonable doubt, *see People v. Hoffmeister*, 394 Mich. 155, 159, 229 N.W.2d 305, 307 (1975), the manner in which the attack is carried out may be relevant to the premeditation inquiry. *See People v. Johnson*, 460 Mich. 720, 733, 597 N.W.2d 73, 79 (1999); *People v. Foster*, No. 264173, 2006 WL 3755196, at *2 (Mich. Ct. App. Dec. 21, 2006); *People v. Nelson*, No. 218339, 2000 WL 33419357, at *4-*5 (Mich. Ct. App. May 26, 2000); *People v. Coddington*, 188 Mich. App. 584, 600, 470 N.W.2d 478, 487 (1991)

("[F]actors which may be considered to establish premeditation include . . . the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted."). Petitioner has cited, and I have found, no Michigan cases requiring the instruction petitioner sought here.

In short, the prosecution did not argue that the nature of the wounds to the victim alone compelled a finding of premeditation and deliberation, merely that it was one factor among many that the jury could consider in deciding whether petitioner premeditated the murder. Further, the trial court correctly and thoroughly instructed the jury on the premeditation element. In these circumstances, petitioner cannot show that he was denied a fair trial by the court's failure to give an explicit instruction that the number of wounds alone was insufficient to establish premeditation. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.      *Ineffective Assistance of Counsel (Claims I, II & IV)*

Petitioner next claims that counsel was ineffective in a number of respects. Specifically, he contends that counsel was ineffective for: (1) asking the court to bind him over on a charge not alleged in the information; (2) failing to secure an interpreter; (3) failing to call alibi witnesses; (4) failing to object to the presence of a biased juror; (5) failing to investigate and present exculpatory evidence; and (6) failing to request a cautionary instruction on accomplice testimony. Petitioner also contends that his appellate counsel was ineffective for failing to raise his ineffective assistance of trial counsel claims on direct appeal. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687

(1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

2.    *Trial Counsel (Claims I & IV)*

a. *Bind Over (Claim I.A)*

Petitioner first contends that counsel was ineffective for requesting that the district court bind over petitioner on a charge not alleged in the information. At the preliminary examination,

following the testimony of Domingo Martin, the prosecutor requested that the court bind petitioner

over to the circuit court for trial on the two charges set forth in the information: first degree

premeditated murder and first degree felony murder. *See* Prelim. Exam. Tr., dated 5/20/91, at 92.

Petitioner's counsel argued that the felony murder charge should be quashed because there was no

evidence of kidnapping, the underlying felony asserted by the prosecution. *See id*. at 95-98. The

court agreed, and dismissed the felony murder and kidnapping charges. *See id*. at 109. With respect

to the premeditation count, defense counsel argued extensively that Martin's testimony was not

credible, that there was not evidence of premeditation, that there was no evidence that petitioner was

still in the car at the time Kenney was killed, and that even if petitioner was in the car there was no

evidence to establish anything more than mere presence. Counsel argued that the court should

therefore dismiss the premeditated murder charge. *See id*. at 98-104. Alternatively, counsel argued

that if the court was not inclined to dismiss the charge outright, the court should bind petitioner over

on an charge of open murder, rather than first degree murder, leaving it to the jury to determine the

degree of the offense. *See id*. at 104. The trial court, doubtful as to the existence of premeditation,

adopted counsel's alternative position and bound over petitioner on a charge of open murder. *See*

*id*. at 109-10.

Petitioner cannot show that counsel was ineffective. Under Michigan law, a "prosecutor is

not required to specify the degree of murder at issue. Additionally, the prosecutor [does] not need

to present evidence of premeditation and deliberation during the preliminary examination to support

a bindover on a charge of open murder." *People v. Baugh*, 243 Mich. App. 1, 7, 620 N.W.2d 653,

656 (2000) (citation omitted), *vacated in part on other grounds following remand*, 249 Mich. App.

125, 641 N.W.2d 283 (2002); *see also*, *People v. Johnson*, 427 Mich. 98, 107-10, 398 N.W.2d 219,

222-24 (1986). This is so even where the initial charging document alleges only a charge of first degree murder. *See Baugh*, 243 Mich. App. at 6, 620 N.W.2d at 656. Defense counsel's argument secured a benefit to petitioner, allowing him to be tried on a charge of open murder with the possibility of a second degree murder conviction, rather than solely on first degree murder. Because counsel's argument was correct as a matter of law, and because there is no indication that the district court was inclined to dismiss the charges outright, petitioner cannot show that counsel was ineffective for making this argument. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Interpreter (Claim I.B)

Petitioner next contends that counsel was ineffective for failing to secure a word-for-word translation of the proceedings. Petitioner was appointed an interpreter to assist in communicating with counsel at the time of trial. At the start of trial, the trial judge inquired of counsel the extent of interpretation necessary for petitioner. Counsel indicated that "[w]hat I discussed with Ms. Goode-Polo was to do a shorthand version of what is being said so that Mr. Planes understands . . ." The court then inquired: "Is that going to be a running commentary?" The interpreter, Ms. Goode-Polo, responded, "If that would not bother the Court." Defense counsel then indicated that he asked Ms. Goode-Polo "to just kind of, you know, abbreviate things as much as possible, just so Mr. Planes understands what is going on, but not to go into lengthy, you know, anything terribly lengthy with him." Trial Tr., dated 10/21/91, at 7.

Petitioner contends that his interpreter did nothing throughout the trial, and did not interpret anything during the course of the proceedings. Apart from his own say-so, however, petitioner has offered nothing to show that this is the case. At the commencement of the trial, the interpreter

indicated that she would do a running commentary on the testimony in the case. Nothing in the record supports petitioner's conclusory assertion that she did not do so. Petitioner did not move for an evidentiary hearing in the state court on his direct appeal, and thus he may not obtain an evidentiary hearing here. *See* 28 U.S.C. § 2254(e)(2). Thus, petitioner's "statement that the interpreter did not translate . . . is simply a bald assertion on a critical issue, lacking support in the record, and thus lacks probative evidentiary value." *Campuzano v. Director, TDCJ-CID*, No. 6:08cv466, 2009 WL 3063423, at *7 (E.D. Tex. Sept. 21, 2009); *see also*, *Tran v. Quinn*, No. C06-1265, 2007 WL 1071955, at *11 (W.D. Wash. Apr. 6, 2007). Further, throughout trial, sentencing, and direct appeal petitioner brought no claim alleging that the interpreter had failed to translate the proceedings. "Only if the defendant makes any difficulty with the interpreter known to the court can the judge take corrective measures. To allow a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate translation, would be an open invitation to abuse." *Valladares v. United States*, 871 F.2d 1564, 1566 (11th Cir. 1989). Accordingly, petitioner has failed to meet his burden of showing that counsel was ineffective, and the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Failure to Call Alibi Witnesses (Claim I.C)

Petitioner next contends that counsel was ineffective for failing to interview and call two alibi witnesses at trial. "Complaints of uncalled witnesses are not favored in federal habeas review." *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985); *Aponte v. Scully*, 740 F. Supp. 153, 158 (E.D.N.Y. 1990). As one court has explained:

> The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial. [Defendant] does not identify any witnesses that his counsel should have called who would have been helpful. Defense counsel's

conduct in this regard appears to fall within the wide range of reasonable professional representation. Decisions whether to engage in cross examination, and if so to what extent and in what manner, are similarly strategic in nature.

*United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *accord Reese v. Fulcomer*, 946 F.2d 247, 257 (3d Cir. 1991) (counsel's performance not deficient where counsel did not call alibi witness whose testimony could have been damaging); *United States v. Porter*, 924 F.2d 395, 397 (1st Cir. 1991) (decision not to call witnesses who could have incriminated defendant within scope of informed professional judgment). Further, it is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007); *Dows v. Woods*, 211 F.3d 480, 486 (9th Cir. 2000).

At trial, petitioner's brother Lazaro Planes, and Lazaro's girlfriend Georgina Rodriquez, testified as alibi witness that petitioner was with then in Grand Rapids watching a basketball game on the night of the murder. Petitioner contends that counsel was ineffective for failing to call Miguel Torres and Jose Hernandez, who also could have provided petitioner an alibi. However, petitioner has failed to present any evidence, by affidavit or otherwise, that these witnesses would in fact have testified on his behalf and, if so, what the content of their testimony would have been. Thus, he has failed to meet his burden of demonstrating that counsel was ineffective in failing to call these

witnesses.  Further, petitioner cannot show that he was prejudiced by the absence of these witnesses.  At his trial, petitioner testified that he arrived in Grand Rapids at around noon or 12:30 p.m. on August 8, 1990.  *See* Trial Tr., dated 10/25/91, at 739.  However both his brother and Rodriguez testified that they saw petitioner in Grand Rapids by 9:00 a.m.  *See id*. at 699, 714-15, 719.  In light of the discrepancies between petitioner's own testimony and that of the alibi witnesses who testified at trial, as well as the other evidence against petitioner, it is not reasonably probable that the result of the proceeding would have been different had counsel presented additional alibi witnesses who would either have further contradicted petitioner's own testimony or contradicted the testimony of the other alibi witnesses.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d.  Failure to Object to Biased Juror (Claim I.D)

Petitioner next contends that counsel was ineffective for failing to object to a biased juror.  During *voir dire*, the trial court excused for cause Juror William Bates, based on his friendship with a Pontiac police officer.  *See* Trial Tr., dated 10/21/91, at 94.  The transcript of the polling of the jury identifies Juror Number 9 as "Juror Bates."  *See id*., dated 10/28/91, at 876.  From this, petitioner concludes that William Bates was allowed to serve on the jury despite having been excused for cause.  However, there is nothing to suggest that William Bates actually served as a juror, or that the transcript reference to "Juror Bates" was anything other than a transcription error.

At the commencement of the jury selection, the court called fourteen jurors to the jury box, who took seats in chairs 1-14.  *See* Trial Tr., dated 10/21/91, at 85-86.  The jurors were replaced as shown in the following chart (the parenthetical number refers to the page of the October 21, 1991, transcript reflecting the discharge and replacement of the juror:

| Seat | Juror | Replaced by | Replaced by | Replaced by |
|------|-------|-------------|-------------|-------------|
| 1 | #51-David Moore | | | |
| 2 | #129-Theresa Garrett | | | |
| 3 | #20-Shirley Lewis | | | |
| 4 | #276-Kevin Connolley | #273-Gary Cibula (133) | | |
| 5 | #37-Kay Hills | #11-Rebecca Hahn (127) | | |
| 6 | #268-David Lawson | #29-Timothy Thiry (144) | #71-James Overdurff (147) | |
| 7 | #26-Snehlata Shah | #5-Martin Dopson (132) | #13-Vince Mapes (134) | #253-Wendy Gossett (140) |
| 8 | #59-Geni Fritch | #401-Larry Biskner (137) | #275-Kimberly Kotynski (138) | |
| 9 | #2-Wallace Barringer | #35 Robert Giza (100) | | |
| 10 | #22-Christopher Herrala | | | |
| 11 | #17-William Bates | #81-William Jones (94) | #6-Nathaniel Woods (96) | |
| 12 | #272-Dolores Rigg | | | |
| 13 | #127-Dorothy Hamburg | | | |
| 14 | #267-Shirley Palardy | #34-Elaine Misteravich (129) | #251-Edith Anders (142) | #65-Debra Gudaknist (146) |

Prior to deliberations, the court excused as alternates Juror #71, James Overdurff, who was seated in Seat 6, and Juror #20, Shirley Lewis, who was seated in Seat 3. *See* Trial Tr., dated 10/28/01, at 864.

After the jury returned its verdict, the court polled the jury to confirm the verdict. Referring to the jurors by seat number, the court asked, "Juror Number 1, is that your verdict?", through each seat number, excluding Seats 3 and 6. *See id*. at 876-77. In transcribing the responses, the court reporter inserted names, but no names were actually mentioned in court. Specifically, the court reporter identified "Juror Number 9" as "William Bates," and "Juror Number 10" as "Robert Giza," and did not identify Christopher Herrala, the juror actually in Seat 10, at all. *See id*. From this

35

transcription, petitioner asserts that Bates had reinserted himself on the jury and deliberated with the jury.

Petitioner's argument is, at best, implausible. Bates was excused for cause, and there is no indication that he did not exit the courtroom as instructed by the judge. To accept petitioner's argument, the Court would have to believe that Bates stood in for Herrala on the jury for no apparent reason,[5] but also that a number of people neither noticed a new person on the jury following an extensive four-day trial nor called the matter to anyone's attention. For petitioner's construction of the record to be accurate, the judge, both defendants, both defense counsel, the prosecutor, the clerk, the bailiff, and the eleven other jurors would all would have to have been blissfully unaware that Bates had swapped places with Herrala. The more likely explanation–indeed, the only sensible conclusion–is that the court reporter merely misidentified the name of the jurors seated in Seats 9 and 10. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### e. Failure to Present Exculpatory Evidence (Claim I.E)

Petitioner next contends that counsel was ineffective for failing to present exculpatory blood evidence. It was undisputed that the blue jeans found in the trunk of codefendant Cobas's car contained both type A and type O blood. It was also undisputed that the victim, Cobas, and petitioner all had type O blood, and that no known person involved in the case had type A blood. *See* Trial Tr., dated 10/25/91, at 512-13, 537-39. At trial, the prosecution's experts testified that the victim's DNA, recovered from the blood, was on the blue jeans, *see id.*, dated 10/24/91, at 372, 401,

---

[5]On the contrary, the record suggests that Bates was actively trying to avoid serving. Bates claimed that his "closest friend" was a Pontiac police officer, but could not provide the friend's name. *See* Trial Tr., dated 10/21/91, at 93.

but they did not testify that either petitioner's or Cobas's blood was found on the jeans or that another blood type was present. At the start of the proceedings the following day, counsel for Cobas brought the blood typing issue to the court's attention, and the following exchange ensued[6]:

MR. KALUZNY:   . . . . There was a ruling initially regarding blood typing. I certainly wanted blood typing suppressed. I did present a case initially, and I think the prosecutor agreed with me on the case. It had nothing to do with DNA, only blood typing on dried blood samples. My understanding – and I'll let Mr. Kabot speak for himself – but it's my understanding he, would like the testing admitted, and certainly, if he does, it opens the door for the prosecutor to get into that as well. I still have my objection, but I think, since we have a joint trial, the Court is going to have to make a ruling as to whether or not it's admissible.

THE COURT:   Mr. Kabot?

MR. KABOT:   My position, your Honor, and, obviously, I'm in concurrence with Mr. Kaluzny, but I would like the blood typing to come in as an offer of proof.

THE COURT:   You want it as an exclusionary for your client?

MR. KABOT:   Exactly. And I think, your Honor, as an offer of proof, it will show that the blood – the second blood type on the pants did not relate to Felipe Planes.

THE COURT:   Thank you. And what will that – Mr. Fanego, what would be your response?

MR. FANEGO:   Your Honor, I don't – if they'd like, we could keep out all blood typing altogether and simply not tell the jury that there were two different types of blood, and then that, at least, would make the issue moot. If that would help Mr. Kabot –

MR. KABOT:   I think that's find. I don't have any problem with that.

Trial Tr., dated 10/25/91, at 535-37. In a further exchange with the prosecutor, the court confirmed that the type A blood found on the jeans was not a type-match to either defendant or to Martin, the chief prosecution witness. *See id.* at 537-38. Because of this, the court ruled that "it would be more prejudicial than probative to bring out this issue because it's going to in fact confuse, so everybody

---

[6]Mr. Kaluzny was Cobas's counsel, petitioner's counsel was Mr. Kabot, and the prosecutor was Mr. Fanego.

has stipulated that we don't mention that there were two types of blood found. That's how I understand it." *Id*. at 538.

Petitioner cannot show that counsel was ineffective for eventually stipulating to keep the blood typing evidence out of the trial. It was clear that both petitioner's counsel and counsel for Cobas's did not want the blood typing evidence to come in, because it could prejudice the case against petitioner and Cobas. Counsel attempted to get around this evidence by having the simple fact that a second blood type was found admitted as an offer of proof, but counsel for Cobas rightly recognized that this would open the door for the prosecution to make use of the blood typing evidence, something that neither counsel for Cobas nor petitioner's counsel wanted. Petitioner has failed to show that counsel's subsequent acquiescence in the prosecutor's proposal to exclude all of the blood-typing evidence was anything other than a reasonable trial strategy.

Nor can petitioner show that he was prejudiced by counsel's decision. There was significant evidence against petitioner and Cobas, including not only the presence of the victim's blood on the jeans found in Cobas's car, but also the down feather in petitioner's car and Martin's testimony. The jeans, which were Cobas's, were found in Cobas's trunk in a pile of clothes. The second blood type did not match any of the known participants in the events leading to Kenney's murder, and there is nothing apart from speculation to suggest that the second blood type on the jeans was deposited there on the night of the murder, rather than at some other time. Further, as noted above, both counsel for petitioner and counsel for Cobas were adamant in not wanting the prosecutor's blood typing evidence to come, suggesting that they viewed this evidence as damaging to petitioner's and Cobas's case. In evaluating prejudice, "it is necessary to consider *all* the relevant evidence that the jury would have had before it if [counsel] had pursued the different path–not just the . . . evidence

[counsel] could have presented, but also the [rebuttal evidence] that almost certainly would have come in with it." *Wong v. Belmontes*, 130 S. Ct. 383, 386 (2009) (per curiam). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claims.

*f. Failure to Request Accomplice Witness Instruction (Claim IV)*

Petitioner next contends that counsel was ineffective for failing to request an accomplice witness instruction with respect to the testimony of Martin. The Court should conclude that petitioner is not entitled to habeas relief on this claim, because he cannot establish prejudice.

Counsel argued extensively that the testimony of Martin was not worthy of belief because of the inconsistencies in his testimony, because of his lies to the police, and because he was involved in the crimes but escaped any punishment by testifying against petitioner. *See* Trial Tr., dated 10/28/01, at 815-16, 817-23. And the trial court gave a proper instruction to the jury on evaluating witness testimony in general. *See id*. at 850-52. In these circumstances, there is not a reasonable probability that the jury would have come to a different conclusion had an accomplice witness instruction been given. *See Krist v Foltz*, 804 F. 2d 944, 947 (6th Cir. 1986) (defense counsel's failure to request an accomplice instruction "insignificant" where the witness's "unsavory past and his motive for naming the defendant as his companion in crime were fully developed by counsel on cross-examination."); *see also*, *Blount v. Battaglia*, 188 Fed. Appx. 515, 519 (7th Cir. 2006); *Green v. Ludwick*, No. 07-CV-10828, 2009 WL 1639742, at *1, *9 (E.D. Mich. June 10, 2009) (Steeh, J., adopting report of Komives, M.J.); *Grant v. Rivers,* 920 F. Supp. 769, 784 (E.D. Mich. 1996) (Gadola, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3. *Appellate Counsel (Claim II)*

Petitioner also contends that his appellate counsel was ineffective for failing to raise his ineffective assistance of trial counsel claims on direct appeal. In the appellate counsel context, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As explained above, petitioner's underlying ineffective assistance of trial counsel claims are without merit, and thus petitioner cannot show that counsel was ineffective for failing to raise them on direct appeal.

I.    *Characterization of Post-Conviction Motion (Claim IX)*

Finally, petitioner contends that the trial court erred in recharacterizing a portion of his motion for DNA testing as a motion for relief from judgment under MICH. CT. R. 6.500-.508. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Nothing in the Constitution requires a state to establish a system of postconviction review, and thus "an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal quotation omitted); *accord Dawson v. Snyder*, 988 F. Supp. 783, 826 (D. Del. 1997) (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) and *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)). As the Sixth Circuit has explained:

> [T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review. *See Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir.1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir.2002). . . . [C]laims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because " 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.' " *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)); *see also Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("States have no

> obligation to provide this avenue of relief, and when they do, the fundamental
> fairness mandated by the Due Process Clause does not require that the State supply
> a lawyer as well." (citation omitted)). A due process claim related to collateral
> post-conviction proceedings, even if resolved in a petitioner's favor, would not
> "result [in] . . . release or a reduction in . . . time to be served or in any other way
> affect his detention because we would not be reviewing any matter directly
> pertaining to his detention." *Kirby*, 794 F.2d at 247. "Though the ultimate goal in"
> a case alleging post-conviction error "is release from confinement, the result of
> habeas review of the specific issue[ ] ... is not in any way related to the
> confinement." *Id.* at 248. Accordingly, we have held repeatedly that "the scope of the
> writ [does not] reach this second tier of complaints about deficiencies in state
> post-conviction proceedings," noting that "the writ is not the proper means" to
> challenge "collateral matters" as opposed to "the underlying state conviction giving
> rise to the prisoner's incarceration." *Id.* at 248, 247; *see also Alley v. Bell*, 307 F.3d
> 380, 387 (6th Cir.2002) ("error committed during state post-conviction proceedings
> can not [sic] provide a basis for federal habeas relief" (citing *Kirby*, 794 F.2d at
> 247)); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir.2001) ("habeas corpus cannot
> be used to mount challenges to a state's scheme of post-conviction relief").

*Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir.2007). Thus, the trial court's recharacterization of his

state court postconviction motion does not raise a federal constitutional claim cognizable on habeas

review.[7]

Nor has petitioner shown that the court's partial recharacterization of his motion was

incorrect. With respect to petitioner's request for DNA testing, the court analyzed petitioner's claim

under the Michigan DNA testing statute, MICH. COMP. LAWS § 770.16. *See People v. Planes*, No.

91-106067-FC (Oakland County, Mich., Cir. Ct. Sept. 20, 2005), at 5-7. In that motion, however,

petitioner also asserted the ineffective assistance of counsel claims that he asserts here. It was these

claims that the trial court characterized as a motion for relief from judgment under Rule 6.508(D).

---

[7]Petitioner's reliance on *Castro v. United States*, 540 U.S. 375 (2003) and *In re Shelton*, 295 F.3d 620 (6th Cir. 2002), is misplaced. Those cases addressed, as a matter of federal law under 28 U.S.C. § 2255, the circumstances in which a court should and should not recharacterize a federal criminal defendant's postconviction motion as one under § 2255. Neither case established a federal constitutional rule binding on state courts. *See Ruelas v. Wolfenbarger*, 580 F.3d 403, 407 (6th Cir. 2009) (noting that *Castro* was decided as a matter of the Supreme Court's supervisory power over the lower federal courts, and is not binding on the state courts).

Although petitioner contends that the trial court should have stopped its analysis after concluding that he was not entitled to DNA testing, it was petitioner himself who raised the additional ineffective assistance of counsel claims in that motion. And contrary to the implicit suggestion in petitioner's argument, the ineffective assistance of counsel claims were not merely part of the underlying motion for DNA testing. Rather, these claims asserted independent basis for relief which had nothing to do with, and were not in any way dependent upon the court's ruling with respect to, the DNA issue. Thus, even if the claim were otherwise cognizable, the court did not err in treating the portion of petitioner's motion raising ineffective assistance of counsel claims as a motion for relief from judgment under Rule 6.508(D). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

J.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously

less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.      *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. There was more than sufficient evidence presented to show that Cobas or petitioner killed the victim, and that they acted in concert in the events leading up to the murder and in the murder itself. Thus, the resolution of petitioner's sufficiency of the evidence claim is not reasonably debatable. Further, it is clear that any challenges to the DNA evidence went to the weight, and not the admissibility, of the evidence, and that petitioner's evidentiary bolstering claim does not raise a cognizable claim of a constitutional violation. Thus, the resolution of petitioner's evidentiary claims is not reasonably debatable. With respect to petitioner's jury instruction claim, as explained above the prosecutor did not argue that the jury could find premeditation solely on the basis of the number of stab wounds, and the trial court gave a detailed and correct instruction on the premeditation element. Thus, the resolution of this claim is not reasonably debatable. It is also clear that petitioner's claim that the trial court erred in recharacterizing his postconviction motion does not present a cognizable habeas claim, and thus the resolution of this claim is not reasonably debatable. Finally, the resolution of petitioner's prosecutorial misconduct and ineffective assistance claims is not reasonably debatable, for the reasons discussed above in connection with those claims. Accordingly, the Court should deny petitioner a certificate of appealability.

K.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

        The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991).  *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

        Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                    s/Paul J. Komives
                                    PAUL J. KOMIVES
                                    UNITED STATES MAGISTRATE JUDGE

Dated: 6/30/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on June 30, 2010.

                        s/Eddrey Butts
                        Case Manager